UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DEBBIE ALMONTASER,

                              Plaintiff,

          -against-

                                                    *ECF CASE*

NEW YORK CITY DEPARTMENT OF EDUCATION;        **ORDER TO SHOW CAUSE;**
JOEL KLEIN, individually and in his official capacity as   **MOTION FOR**
Chancellor of the New York City Department of Education;   **PRELIMINARY**
ROSEMARY STUART, individually and in her official   **INJUNCTION WITH**
capacity as Community Superintendent of District 15 and   **TEMPORARY**
Hiring Manager; CITY OF NEW YORK; MICHAEL   **RESTRAINING ORDER**
BLOOMBERG, individually and in his official capacity as
Mayor of the City of New York; DENNIS WALCOTT,   *07 Civ 10444*
individually and in his official capacity as Deputy Mayor
for Education and Community Development,   10444 (SHS)(FM)

                              Defendants.
------------------------------------------------------------------------x

          Upon the Summons and Complaint and upon the declarations of Debbie Almontaser,

dated November 18, 2007, Ernest A. Logan, dated November 15, 2007, Michelle Fine, dated

November 15, 2007, Jose Rolando Matalon, dated November 16, 2007, and Alan Levine, dated

November 18, 2007, and sufficient cause therefor appearing, let defendants show cause before

the United States District Court, Southern District of New York, located at 500 Pearl Street, New

York, New York on the 30 day of November , 2007, at ~~9:30 o'clock~~ *12:00 pm,* or as soon thereafter as

counsel can be heard, why an Order should not be entered, pursuant to Rule 65 of the Federal

Rules of Civil Procedure:

          (a)  affording plaintiff a full and fair opportunity to be reviewed and considered

for the position of principal at Khalil Gibran International Academy according to principles of

merit and fitness, as provided in Chancellor's Regulation C-30, and including final consideration by a disinterested person, pending the final determination of this action; and

(b) enjoining and restraining defendants from proceeding pursuant to Chancellor's Regulation C-30 beyond the Level 1 Committee or otherwise to select, assign or appoint a principal at the Khalil Gibran International Academy until plaintiff is afforded such consideration; and

(c) granting such other and further relief as may be just and proper; and it is further

ORDERED that pending the hearing and determination of this motion,

(a) defendants are restrained, enjoined and stayed from proceeding beyond the Level 1 Committee level to select, assign or appoint a principal at the Khalil Gibran International Academy unless and until plaintiff is afforded a Level 1 Committee interview pursuant to Chancellor's Regulation C-30; and

(b) plaintiff is entitled to expedited discovery as requested; and it is further ~setforth at conf on 11/9

ORDERED, that service of a copy of this Order together with the papers on which it is granted, upon the Office of the Corporation Counsel of the City of New York, 100 Church Street, New York on or before November 19, 2007, shall be good and sufficient service upon defendants.

ENTER:

_____
U.S.D.J.

2

Almontaser Declaration

## DECLARATION

DEBBIE ALMONTASER, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct to the best of my ability:

1. I am the plaintiff in this action and make this declaration in support of my motion for an order that my application to become principal of the Khalil Gibran International Academy be considered fully and fairly.

2. My entire adult life has been devoted to two principal undertakings, the education of children and the promotion of understanding and tolerance between persons of diverse ethnic, racial, and religious backgrounds. When I was asked by New Visions for Public Schools, an educational reform organization that assists the Department of Education in establishing new schools, to participate in the development of KGIA, and then to become its founding principal, I viewed that as an opportunity to merge these two undertakings: to educate children through a curriculum that was dedicated to multi-cultural understanding. That I was forced out of KGIA last August under a barrage of accusations about hatred and terrorism is an irony that I can barely comprehend.

3. KGIA was designed as a school that would provide a rigorous regents-based curriculum with Arabic language and cultural studies, and that would equip students for work in such areas as international affairs, diplomacy, and cross-cultural understanding. As with the more than 60 other dual language programs in the city, KGIA was created to foster multilingual and multicultural education. It was also joining many New York City public schools that use theme-based approaches to inform and enrich curriculum across subject areas.

4.  On February 12, 2007 the Department of Education announced the establishment of KGIA and I was named Project Director, the title that is given by the DOE to all persons who lead the development of a new school.  Within two days, and continuing almost daily until I was forced to resign, newspapers and internet blogs began attacking the school as an Islamist religious school.

5.  Despite the attacks on KGIA, planning for the school continued.  I supervised the development of curriculum, hired and trained staff, recruited parents, purchased supplies, and, in general, prepared the school for its September opening.  On July 2, I was made the interim acting principal of the school, which is the title that leaders of new schools are customarily given until a permanent principal is selected.

6.  In early August, an internet blog suggested that I was connected to t-shirts made by a youth organization that used space of an organization on whose board I sit.  The t-shirts said "Intifada NYC." I had never heard of the t-shirts until the issue about them was raised in early August, and they had no connection to KGIA.

7.  The New York Post pursued the t-shirt story and, at the urging of representatives of the DOE, I reluctantly agreed to a telephone interview with their reporter. During the interview, which took place on Sunday, August 5, the reporter asked about the Arabic origin of the word "intifada." I told him that the root word from which the word intifada originates means "shake off."  I emphasized that the word intifada has different meanings for different people, and, certainly for many, given its association with the Palestinian/Israeli conflict, it implied violence.

8. The story in the *Post* ran the next day, Monday, August 6, under the headline:

"City Principal is 'Revolting.'" After saying that "Almontaser downplayed the

significance of the T-shirts, " it quoted me as saying the following:

> The word [intifada] basically means 'shaking off.' That is the root
> word if you look it up in Arabic.
>
> I understand it is developing a negative connotation due to the
> uprising in the Palestinian-Israeli areas. I don't believe the
> intention is to have any of that kind of [violence] in New York
> City.
>
> I think it's pretty much an opportunity for girls to express that they
> are part of New York City society . . . and shaking off oppression.

Exhibit   to the Complaint.

9. Later on Monday afternoon, a DOE press official said that he and Chancellor

Klein had drafted an apology for me to issue. I protested that I had nothing to apologize

for, but he insisted, telling me that the people who have been supporting me and the

school "are sitting on the fence." We discussed language the DOE drafted and I

suggested a revision. The clear implication was that my job and the school were at stake

if I refused. The DOE issued the original statement later on Monday.

10. The next day's Post story was no less hostile and an editorial called upon the

Chancellor to remove me from KGIA. Over the next two days, the Post stories

continued, joined by attacks upon me in the New York Sun. Both papers quoted Jewish

leaders who interpreted my reported remarks as a defense of violence against Israel.

11. On Thursday, I met with the head of New Visions and Deputy Mayor Dennis

Walcott, who told me he was speaking for Chancellor Klein. They both urged me to

resign, making it clear that the school would not open and/or continue if I remained

interim acting principal. Walcott said that the Mayor wanted my resignation by 8 a.m.

the next morning so that he could announce it on his radio show that morning.

12. I met with colleagues in the DOE who said that, if I resisted resigning, the DOE would insure that the school failed. Given the choice of seeing the school not open or resigning, I drafted a resignation letter which I faxed to the DOE the next morning. Exhibit    to the Complaint.

13. I am currently assigned at DOE headquarters to the Office of School and Youth Development, where I work on a team that assists at-risk schools.

14. The DOE has opened a large number of new schools in the past few years. The person who heads the school when it opens has the title of interim acting principal, which was my title at KGIA. In the weeks after a new school opens, the DOE posts the position of principal of the school on the DOE website and solicits applications for that position. The selection process then proceeds in accordance with the Chancellor's C-30 Regulation.

15. In early October, I learned that the position of principal at KGIA had been posted. I would have applied for the position had I continued as interim acting principal and began planning to submit my application. The closing date for applying was Tuesday, October 16.

16. On October 5, 2007 I met with Garth Harries, who, as the head of the DOE's Division of New Schools, had worked closely with me and New Visions during the months that KGIA was being developed. In the weeks since I had left KGIA, Harries and I had spoken on a few occasions about other career opportunities. None of them were very appealing. In KGIA, I had developed an innovative school with a vision that incorporated all of my lifelong passions. Harries made it clear that the DOE would not

place me in, or allow me to develop, a school that was likely to attract attention. In other words, the DOE would not allow me to run the kind of creative school that interested me.

17. I told Harries at that meeting that I intended to apply for the KGIA principal's position. He said that he had learned from others that I was considering that option and he had discussed it with the DOE's "executive leadership." He said that they would not support my return to the school. He said that, since I had exhibited "media naivete," they would only support my running a school that was "less visible." If I did apply for the KGIA principal, he said that "it is a community superintendent's decision," and that she "has a boss [the Chancellor] who would not support your appointment."

18. On Saturday, October 13, I sat down at my computer to fill out the DOE's on-line application for the KGIA position. It was no longer on the DOE website. I then called my lawyer and, on Monday, October 15, the posting reappeared on the DOE website. I filled out the application and, on October 16, was sent an acknowledgment of its receipt.

19. The first stage of the C-30 process is the sending of all applications for the position to the "Hiring Manager." For the KGIA position, the Hiring Manager is the Community Superintendent, Rosemary Stuart. It is her responsibility to select three to five applicants for interviews by the Level I Committee, which is a school-based committee that includes parents, staff, and union representatives. I have learned that those interviews are scheduled for next Tuesday, November 20.

20. Last Friday, November 16, I received a "rejection" message advising me that I was not one of those selected for an interview by the Level I Committee. Exhibit    to the Complaint.

21. I am applying to be the principal of KGIA because, as the person who envisioned the school, who helped develop the curriculum, hired the staff, and recruited students, in short, the person most responsible for creating KGIA, I believe I am the person most qualified to implement its vision. I would like to continue that work and to build KGIA into a model dual language school that, to quote KGIA's mission statement, "helps students of all backgrounds learn about the world" and fosters in them "an understanding of different cultures, a love of learning, and desire for excellence in all of its students."

22. I believe I have been excluded from the C-30 interview process, not because of my lack of qualifications, but because of my protected speech as reported in the New York Post last August and the capitulation of DOE and City officials to the disgraceful and discriminatory attacks upon me and the school.

Debbie Almontaser

Dated: November 18, 2007
New York, New York

Logan Declaration

DECLARATION

ERNEST A. LOGAN, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct to the best of my ability:

1. I am President of the Council of Supervisors and Administrators, the union that represents Principals, Assistant Principals, Administrators, and Supervisors in the New York City public school system. I make this Declaration in support of Debbie Almontaser's motion to be considered for appointment to the position of permanent principal of the Khalil Gibran International Academy ("KGIA") in Brooklyn.

2. Ms. Almontaser was project director to set up the school and became the interim acting principal of KGIA on July 1, 2007. On August 10, 2007 she submitted her resignation as principal, saying that she did so to save the school. She alleges in her lawsuit that she was forced to resign in response to the threat by the Department of Education that the school would be closed if she did not resign. At this time, I do not have sufficient information to state whether or not she was forced to resign, and my position in support of her motion does not depend on that fact. Whether or not she resigned, she has a right to have her application be considered.

3. Under the Chancellor's C-30 Regulation, a person with the necessary qualifications, including appropriate licenses, is entitled to apply to become a permanent principal of a New York City public school. Ms. Almontaser possesses the licenses and other qualifications and I am advised that, on October 16, 2007, she submitted a timely application to become the permanent principal of KGIA.

4. In the days after the submission of Ms. Almontaser's application, the newspapers reported that DOE Chancellor Joel Klein had said that Ms. Almontaser would not be considered for the position. On October 25, 2007, I wrote the Chancellor saying that Ms. Almontaser is a

respected educator, that she has every right to apply for the principalship KGIA and she should be fairly considered for the position. My letter is attached to the declaration of Alan Levine as Exhibit $\mathcal{5}$. I have not received a response.

5. When applications are received for a principal's position at a middle school such as KGIA, the C-30 process requires that the Community Superintendent select the most qualified applicants and submit them to what is known as the Level I Committee, which is a committee consisting of staff and parent and union representatives. The Level I Committee then interviews those applicants deemed most qualified and recommends one or more of the applicants to the Community Superintendent, who, nominally, makes the final decision. However, Community Superintendents are appointed by the Chancellor and serve at the pleasure of the Chancellor. They are expected to implement the Chancellor's policies. In reality, therefore, the Chancellor is the final decision-maker.

6. The CSA has been advised by the DOE that the Level I Committee interviews are to be held Tuesday, November 20, 2007. Given Ms. Almontaser's obvious qualifications for the position as KGIA's principal, including her long involvement with creating the school's mission, developing its curriculum, and recruiting staff and students she should be interviewed.

7. The Chancellor's C-30 Regulation "is intended to ensure that the supervisory selection process is equitable and based on principles of merit and fitness." If Ms. Almontaser's application has been excluded from consideration for reasons other than "merit and fitness," then her exclusion violates both the letter and spirit of the C-30 Regulation.

8. Even more important than the legal issue is the implication of the Chancellor's actions for all principals and administrators in New York's public schools. I have been advised that DOE representatives have told Ms. Almontaser's representatives that the DOE will not permit Ms.

Almontaser to serve as KGIA's principal because she is a "lightning rod." Sometimes that phrase refers to people who have committed notorious crimes or engaged in significantly anti-social behavior, and, under those circumstances, their disqualification presents no problem. But if, as appears to be the case, Ms. Almontaser has been disqualified because she has attracted some controversy, that position by the DOE is fundamentally at war with the qualities of independence and creativity that make an effective school leader. Such leaders sometimes generate public controversy. True, if, as a result, they lose the confidence of their staff, parents, and students, then the principal's qualifications might be questioned. But prior to her leaving the school, Ms. Almontaser had the continuing support of all segments of the KGIA community, and the only controversy was that which was created by a few newspapers and bloggers. Under those circumstances, a decision by the Chancellor that public controversy trumps school support and professional qualifications sets a bad precedent that discourages independent and professional leadership. Sound educational policy demands that Ms. Almontaser's application be referred to the Level I Committee for consideration.

For the foregoing reasons, I support Ms. Almontaser's motion that her application be referred to the Level I Committee and, that she be fairly considered for appointment as principal of KGIA.

ERNEST A. LOGAN

Dated: November 15, 2007
     New York, N.Y.

Fine Declaration

DECLARATION

MICHELLE FINE, pursuant to 28 U.S.C. § 1746, declares under penalty of Perjury that the following is true and correct to the best of my ability:

1.  I am Distinguished Professor of Psychology and Urban Education at the Graduate Center, CUNY. I have been a long time researcher of small schools in New York and a social psychologist and just completed a sabbatical at the Jewish-Arab Center at Haifa University. I am co-author of a forthcoming book on Muslim American youth post 9/11,

2.  Over the past several years, I have known of Debbie Almontaser as a well respected New York City educator who worked in and across communities to foster cross-cultural understandings, co-founding such organizations as Brooklyn Bridges, the September 11th Curriculum Project and the We Are All Brooklyn Coalition.

3.  I had the privilege of working with her on a book project, Forever After: New York City Teachers on 9/11 (Teachers College Press, 2006) to which she contributed a chapter about a mural-making project at PS 230 that she coordinated. The mural was designed to stand as a testament to the friendship and understanding that endured across cultures in spite of the September 11th attacks and their aftermath.

4.  Those of us committed to democratic, inquiry based public education in New York City should be most grateful to Almontaser, for designing, and her willingness to direct, the new Khalil Gibran International Academy. But instead of gratitude, Almontaser and the school have been served a vicious smear campaign. Hate-filled blogs and media criticisms of the school ironically reveal just how desperately NYC needs Almontaser and KGIA. Given her long history as a peace educator in New York City, and her vital role in coalition building

post 9/11, the loss of Almontaser as Principal of KGIA throws a shadow of shame on us all; what my mother, Rose Fine, a Jewish immigrant from Poland would call a "shanda" – a deep, penetrating shame that saturates the soul of our civic community.

5.  The lack of an aggressive defense of Almontaser by the Department of Education, signals an insidious nod to those extremists who seek to undermine public education by silencing, censoring, intimidating and demonizing many – including disproportionately Arabs and Muslim Americans. These extremists pose a fundamental threat to democratic education, both in K – 12 and higher education. They are accountable to no one, and their influence on free and open discussion in schools across the City and country is widely felt.

6.  By its failure to stand up to the smear campaign directed at Almontaser, the DOE has not only done a great disservice to a brave and innovative educator, but perhaps even more importantly, has threatened every public school administrator and educator who dares to educate all children well, and in the process creates an intellectual environment in which controversial topics can be addressed. The KGIA, like so many of New York City's most compelling small schools, commits at once to quality and inquiry; to educational access and multi-culturalism; to high standards and equity; to civic courage and broad based engagement. We can only be proud of – and must stand behind -- those public schools that dare to take up controversy with the wisdom of serious scholarship, with multi-faith and multi-community networks, and with the courage and calm of strong leaders like Debbie Almontaser.

7.  The corrosive effects on the public school system of the DOE's dismal treatment of Almontaser, as well as the injustice done to her, is compounded by its decision to exclude her

from the process by which a permanent principal of KGIA will be selected.  I am hopeful that

the court will reverse that decision.

MICHELLE FINE

November 15, 2007

Matalon Declaration

DECLARATION

JOSE ROLANDO MATALON, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct to the best of my ability:

1. I am a rabbi at Congregation B'nai Jeshurun on the Upper West Side of Manhattan, where I have served for twenty-one years. I make this Declaration in support of Debbie Almontaser's request that her application to become the principal of the Khalil Gibran International Academy be fully considered.

2. Over her distinguished career, Debbie Almontaser has devoted enormous time and energy to building bridges and promoting understanding between the Arab and Jewish communities. I have personally been involved in those efforts with Ms. Almontaser on numerous occasions, and have participated in different programs with her, some of which took place at my congregation. For the past three years, we have held a break-fast meal at B'nai Jeshurun following Yom Kippur and Ramadan for our communities to meet and to interact.

3. The creation of KGIA was the culmination of Ms. Almontaser's career-long inter-ethnic activities. It was, therefore, with particular dismay that I witnessed the events of last August unfold. KGIA, which was established with the goal, among others, of promoting understanding of Arab culture, was attacked by persons who perversely suggested that the school promoted hostility to other ethnic groups.

4. When the issue of the t-shirts with the legend "Intifada NYC" arose, particularly in the New York Post, my dismay turned to horror. The attacks now suggested that Debbie Almontaser, whose life's work was to promote peaceful understanding, was a

defender of violence. Those who attacked her had their own pernicious agenda, one

fueled by the deplorable anti-Arab prejudice that has characterized our City and country

in the post-9/11 era. What continues to mystify me to this day was the silence of the

Department of Education. Everyone in the DOE who knew Ms. Almontaser knew of her

lifelong commitments and knew that the insinuation that she condoned violence was utter

nonsense. In my opinion, it is inexcusable that they did not say so immediately.

5. Of particular concern to me as a rabbi was the role of the Jewish community in

Ms. Almontaser's downfall. Virtually every Jewish religious and secular leader in the

City knew of her work, and knew how greatly it had benefited the Jewish community.

Yet, for the most part, they either endorsed the Post's attacks, or remained silent. It was,

therefore, particularly gratifying that a group of my colleagues signed a letter to the

Mayor and to the Chancellor expressing our view that those who had attacked Ms.

Almontaser did not represent the views of the mainstream Jewish community. I have

attached that letter to my affidavit.

6. On the issue of the "intifada t-shirts" themselves, it is important to refute any

notion that Ms. Almontaser's remarks, as quoted in the Post, were, as it has been

suggested, either politically naïve or insensitive. The further notion that her remarks in

any way implied her unfitness to lead KGIA or any other public school is absurd. It is a

sad commentary upon the limits of permissible dialogue in this City, and particularly

within the Jewish community, that a refusal to condemn the wearing of t-shirts saying

"Intifada NYC" by Arab girls is cause for public condemnation. It is not as if Ms.

Almontaser defended the Middle East intifada. Rather than do that, Ms. Almontaser

simply defined the meaning of the word intifada, and expressed the common sense

opinion that those who wore the t-shirts did not mean to promote violence in New York City.

7.   There are regrettable antecedents to the litmus test to which the press and the DOE subjected Ms. Almontaser, most notably in the regularity with which African Americans are asked to denounce outspoken members of their community.  The idea that there is only one acceptable view on issues of public concern is not only at odds with our constitutional guarantees, but is a perversion of the Jewish tradition of vigorous debate and discussion on all questions of importance to our people.

8.   Members of my community have betrayed a valued friend.  Many of them admit to me in private that they regret what happened to Ms. Almontaser, but they are afraid to say so publicly.  I hope that this Court will remedy the great wrong that has been done to her.  Our public school system, and the civic life of this City, depend on such people as Debbie Almontaser.

November 16, 2007

JOSE ROLANDO MATALON

November 2007

TO MAYOR BLOOMBERG AND CHANCELLOR KLEIN:

STATEMENT FROM JEWISH LEADERS CONCERNING THE KHALIL GIBRAN
INTERNATIONAL ACADEMY AND DEBBIE ALMONTASER

   We, the undersigned Rabbis, are active members of the Jewish community who have
spent much of our lives seeking to promote just and productive relationships with members
of other communities in New York City. It is because of those endeavors that we are
particularly dismayed at the circumstances leading to the resignation of Debbie Almontaser
as principal of the Khalil Gibran International Academy.
KGIA was Ms Almontaser's vision
and she was unarguably the right person to lead it. That she is not its principal today is
solely the result of attacks upon her by marginal, right-wing groups, who charged her and
KGIA with hostility to Israel and Jews.

   We state emphatically that those groups do not represent the views of the mainstream
Jewish community in New York City. Over her long and brave career, Debbie Almontaser has
devoted enormous time and energy to building bridges and promoting understanding between
the Arab and Jewish communities. The creation of KGIA was the culmination of those
career-long efforts. Her removal as principal of KGIA will only serve to inflame tensions
between those communities and to reinforce the atmosphere of hostility to which the Arab
community in New York has been subjected since 9/11.

   We urge in the strongest terms possible that Ms. Almontaser be reinstated as principal
of KGIA as soon as possible.

signatories:

Rabbi Marcelo Bronstein, Congregation B'nai Jeshurun Rabbi Rachel Cowan, Institute for
Jewish Spirituality Rabbi Michel Feinberg, Greater New York Labor Religion Coalition Rabbi
Steve Greenberg, CLAL-The National Jewish Center for Learning and Leadership Rabbi
Ellen Lippmann, Kolot Chayeinu/Voices of Our Lives, Brooklyn, NY Rabbi J. Rolando Matalon,
Congregation B'nai Jeshurun Rabbi Shira Milgrom, Congregation Kol Ami Rabbi Felicia Sol,
Congregation B'nai Jeshurun Rabbi Mychal Springer, Jewish Theological Seminary Rabbi
Burt Vizotsky, Jewish Theological Seminary Rabbi Melissa Weintraub, Encounter Rabbi
Simkha Weintraub, Jewish Board of Family and Children's Services

*organizational affiliation listed for identification purposes only

You can reach us us c/o Rabbi Rolando Matalon, Congregation B'nai Jeshurun, 2109
Broadway, New York City, NY 10024 or at ROLY1@aol.com.

Levine Declaration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

DEBBIE ALMONTASER,

                                    Plaintiff,

              -against-


NEW YORK CITY DEPARTMENT OF EDUCATION;
JOEL KLEIN, individually and in his official capacity as
Chancellor of the New York City Department of Education;
ROSEMARY STUART, individually and in her official
capacity as Community Superintendent of District 15 and
Hiring Manager; CITY OF NEW YORK; MICHAEL
BLOOMBERG, individually and in his official capacity as
Mayor of the City of New York; DENNIS WALCOTT,
individually and in his official capacity as Deputy Mayor
for Education and Community Development,

                                    Defendants.
-------------------------------------------------------------------------x


DECLARATION


              ALAN LEVINE, pursuant to 28 U.S.C. § 1746, declares under penalty of

perjury that the following is true and correct to the best of my ability:

    1.  I am one of the attorneys for Debbie Almontaser, the plaintiff in this action.  I

make this Declaration in support of her motion for an order (1) affording plaintiff a full

and fair opportunity to be reviewed and considered for the position of principal at Khalil

Gibran International Academy according to principles of merit and fitness, including final

consideration by a disinterested person; (2) staying defendants from selecting, assigning,

or appointing a principal at the Khalil Gibran International Academy; and (3) expediting

discovery.

2.  On September 20, 2007 I wrote a letter to the Department of Education ("DOE") pursuant to New York's Freedom of Information Law requesting that I be provided with copies of certain public records pertaining to Debbie Almontaser. Exhibit 1 to this Declaration. I received a reply on September 24, 2007 enclosing only one document, Ms. Almontaser's letter "resigning" from her position at KGIA, and requesting until October 23, 2007 to produce additional documents. Exhibit 2 to this Declaration. On October 22, 2007 I received a letter from the DOE requesting until November 19, 2007 to respond to "the balance of [my] request. . . ." Exhibit 3 to this Declaration. No additional documents were enclosed, nor have any others been received to date.

3.  On October 9, 2007 I wrote Chancellor Joel Klein setting forth what I believed to be Ms. Almontaser's legal claims. Exhibit 4 to this Declaration. I suggested, however, that we should seek a resolution of those claims "short of a lawsuit that will be painful for everyone." I advised him that there was an October 16 deadline for submitting an application for the principal's position at KGIA and that we needed to reach agreement by that date unless the deadline could be extended. If it were not, I said that she would apply for the position.

4.  I received a reply dated October 11, 2007 from Michael Best, General Counsel to the DOE, agreeing to discuss the matter by telephone. Exhibit 5 to this Declaration. I called Best and we spoke a few times that Friday and Saturday, October 12 and 13. He said that the Chancellor would not extend the application deadline for the principal position at KGIA. I replied that we then only had a few days to reach agreement and that, if we could not do so, Ms. Almontaser would apply for the position. He said that under no circumstances would she be returned as principal of KGIA. He said that she was a

"lightning rod" and that her return to KGIA would revive the earlier controversy. I

replied that the only controversy had been manufactured by a few newspapers and

bloggers and that the DOE could simply make it plain that, in view of Ms. Almontaser's

role in establishing KGIA, she had the DOE's full support as its leader. He said that her

return to KGIA was not negotiable.

5.   We then discussed other positions within the DOE that Ms. Almontaser might

find fulfilling and that might help her to re-establish her damaged reputation. Best said

that the DOE would find her a job as a principal or an assistant principal, but, given that

she was a "lightning rod," she would not be given a position at a "themed" school or a

"multicultural school." I responded that it seemed as if the DOE wanted her to work in a

place where she would not be noticed, thus depriving her of an opportunity to repair her

reputation. He did not disagree, and I said that she had no choice but to apply for the

KGIA position.

6.   Later on that Saturday, Ms. Almontaser went to the DOE website to fill out the

KGIA application. She found that the position was no longer posted, even though the

original deadline was the following Tuesday, October 16. On Monday, I called Best to

complain about the withdrawal of the posting. He attributed it to bureaucratic error and

said the posting would be restored. The position was in fact restored and Ms. Almontaser

submitted the application before the deadline.

7.   After Ms. Almontaser publicly announced that she had applied for the principal

position at KGIA, a story appeared in the New York Times quoting a spokesman for the

Chancellor to the effect that she "would not be placed as principal at the school." Exhibit

to the Complaint. The President of the Council of School Supervisors and Administrators,

Ernest Logan, wrote the Chancellor on October 25, 2007 saying that Ms. Almontaser had "every right to apply for the principalship." Exhibit 6 to this Declaration. He said that the application she had submitted "should be fairly considered and she should not be peremptorily excluded from consideration. . . ." Mr. Logan never received a response.

8. I wrote the Chancellor the next day, October 26, asking him about the statement attributed to him in the Times. Exhibit 7 to this Declaration. I asked him if he meant that Ms. Almontaser would not be considered for the KGIA position and, if so, on what basis was he denying her such consideration. I have received no response.

9. On November 16, 2007 I wrote Mr. Best saying that I had learned that interviews for the KGIA principal's position were being conducted the next Tuesday, November 20. Exhibit 8 to this Declaration. I said that Ms. Almontaser had been advised that her application had been rejected, Exhibit   to the Complaint, and that we intended to file suit on Monday, November 19, seeking a prompt order requiring that she be interviewed for the position. My letter asked for the name of the person to notify in the event that we appeared before a Judge.

10. Late on Friday afternoon I received a call from Paul Marks of the Law Department, who said he was responding to my letter. I said that we might be able to avoid imposing upon the court for emergency relief if he could advise me if Ms. Almontaser's application had been rejected after consideration of its merits and fitness, and if the DOE would agree not to appoint a principal until a hearing on our motion was held. He called me later to say that he could not give me the information that I had requested and that the DOE would not agree to refrain from appointing a principal.

11. Attached as Exhibits 9 and 10 respectively are plaintiff's First Request for

Production of Documents and Interrogatories and two Notices of Deposition.   Plaintiff

requests that this discovery be ordered to proceed on an expedited basis.

12. No prior application has been made for the relief requested herein.

Alan Levine

Dated:  November 18, 2007

Exhibit 1

**Law Office of**
# ALAN LEVINE

99 Hudson Street, 14ᵗʰ Floor
New York, New York 10013

Tel: (212) 739-7506
Fax: (212) 431-4276

September 20, 2007

**By Email and Telefax**
Gabrielle Scalise, Esq.
New York City Department of Education
Office of Legal Services
52 Chambers Street, Room 308
New York, New York 10007

Re: FOIL Request

Dear Ms. Scalise:

I represent Debbie Almontaser. Pursuant to the New York State Freedom of Information Law ("FOIL"), I request that you provide me with copies of the following public records pertaining to the Kahlil Gibran International Academy ("KGIA"):

1. Correspondence, including emails or other forms of communication, to or from the DOE, concerning t-shirts bearing the word "intifada" (the "t-shirts") that were alleged to have some connection to KGIA.

2. All notes, memoranda or other documents written by employees of the Department of Education ("DOE") concerning the t-shirts.

3. The list of questions provided to the DOE by Chuck Bennett of the New York Post on or about August 6, 2007 concerning his proposed interview with Debbie Almontaser.

4. The list of questions provided to Ms. Almontaser by the DOE concerning that interview.

5. Correspondence, including emails, to or from the DOE, concerning the New York Post story by Chuck Bennett on or about August 7, 2007 concerning Ms. Almontaser.

6. Correspondence, including emails or other forms of communication, to or from the DOE, concerning Ms. Almontaser's letter "resigning" as principal of KGIA.

7. All notes, memoranda or other documents written by employees of the Department of Education ("DOE") concerning Ms. Almontaser's "resignation."

Please be advised that, pursuant to § 69(3) of FOIL, you are required to respond within five days to this request.

Sincerely yours,

Alan Levine

cc: Michael Best, Esq.

2

Exhibit 2



# THE NEW YORK CITY DEPARTMENT OF EDUCATION
JOEL I. KLEIN, *Chancellor*

Michael Best, General Counsel

September 24, 2007

Alan Levine, Esq.
99 Hudson Street – 14th floor
Suite 7506
New York, NY 10013
Alan_levine@PRLDEF.org

Re: FOIL Request # 5348

Dear Mr. Levine:

This will acknowledge receipt of and partially respond to your Freedom of Information (FOIL) request for information relating to the Khalil Gibran International Academy.

*Item #6*        *Correspondence, including emails or other forms of communication, to or from the DOE, concerning Ms. Almontaser's letter resigning as Principal of KGIA:*

Attached please find Ms. Almontaser's letter of resignation.

At this time, we anticipate that a response to the balance of your request will be provided to you by October 23, 2007.

Sincerely,

Christine J. Kicinski
Central Records Access Officer

Att.

c:      M. Feinberg
        M. Meyer

Exhibit 3



# THE NEW YORK CITY DEPARTMENT OF EDUCATION
JOEL I. KLEIN, *Chancellor*

Michael Best, General Counsel

October 22, 2007

Alan Levine, Esq.
99 Hudson Street – 14th floor
Suite 7506
New York, NY 10013
Alan_levine@PRLDEF.org

Re: FOIL Request # 5348 – KGIA

Dear Mr. Levine:

Due to the volume and complexity of FOIL requests this office has been processing, we have not yet been able to obtain all the documents that may be responsive to your request or had the opportunity to comply with our obligation to review the documents we have obtained in order to determine their releasability.

At this time, we anticipate that a response to the balance of your request will be provided to you by November 19, 2007.

Sincerely,

Arlene Longoria Carragher
Administrative Assistant

Att.

c:    M. Feinberg
      M. Meyer

Exhibit 4

**Law Office of**
## ALAN LEVINE

99 Hudson Street, 14th Floor
New York, New York 10013

Tel: (212) 739-7506
Fax: (212) 431-4276

October 9, 2007

**By Telefax**
Chancellor Joel Klein
Department of Education
52 Chambers Street
New York, N.Y. 10007

re: Debbie Almontaser

Dear Chancellor Klein:

I represent Debbie Almontaser, who was recently forced to resign as principal of the Khalil Gibran International Academy. Her resignation was demanded by the Mayor and the DOE notwithstanding that KGIA was her vision and her creation, that she was indisputably qualified to lead the school, and that she had the intense loyalty and devotion of her colleagues, her staff, and the parents of KGIA. Ms. Almontaser brought the school to within weeks of its opening despite unrelenting attacks upon her and KGIA from a marginal right-wing group that talked of KGIA as a training ground for terrorists.

When the right-wingers sought to link her to t-shirts that said "Intifada NYC," the charge was no more credible than the talk of terrorism. Ms. Almontaser told the DOE that she had no connection to the t-shirts and that the charges should simply be ignored. Although a major news network saw so little in the story that it dropped its inquiry, the DOE insisted that she submit to an obviously hostile interview by the New York Post. Predictably, the Post story distorted her words. Nevertheless, even in the version of her words that the Post ran, Ms. Almontaser carefully distanced herself and the t-shirts from the Middle East intifada.

The Post and the right-wingers were not satisfied. In their minds, since Ms. Almontaser had failed to unequivocally condemn the t-shirts, she was a supporter of violence against Israel and Jews. The DOE had available to it a simple response, one which would have preserved Ms. Almontaser's dignity and reputation, and would have quieted the islamaphobes who were seeking her ouster: "Ms. Almontaser has been a consistent and public advocate of nonviolence. She has, at great personal risk and with notable courage, sought to build bridges between the Muslim and Jewish communities. To imply that she would support violence against Jews is repudiated by everything she has said and done in her career. The charges are preposterous. Ms.

Almontaser has our unequivocal support as principal of KGIA. Neither the DOE nor Ms. Almontaser will say another word on the matter."

The DOE did not say that. Instead, it forced her to issue an abject and humiliating apology. When that failed to quiet the zealots, the DOE and the Mayor demanded her resignation.

I have said all this for two reasons. First to remind you of the extraordinary injustice that has been done to Ms. Almontaser in the hope that it will encourage you to find a way to right this terrible wrong. And, second, to make it clear that, in my view, her "resignation" was in fact a discharge, and it was a discharge resulting from the expression of views that were not deemed satisfactory to the DOE. As such, it violated her First Amendment rights.

There should be a way of resolving this matter short of a lawsuit that will be painful for everyone. As far as I can tell, officials in the DOE still hold Ms. Almontaser in high regard. I am hopeful that that will facilitate open and respectful negotiations. Ms. Almontaser and I are available to meet immediately. We need to reach agreement by October 16, unless the deadline by which applications for the principal's position at KGIA can be extended. Failing that, Ms. Almontaser intends to apply for the position.

I look forward to hearing from you at your earliest convenience.

Yours sincerely,


Alan Levine

cc: Michael Best, Esq.

Exhibit 5



# THE NEW YORK CITY DEPARTMENT OF EDUCATION
### Joel I. Klein, *Chancellor*

Michael Best, General Counsel

October 11, 2007

Alan Levine, Esq.
99 Hudson Street, 14th Floor
New York, NY 10013

RE: Debbie Almontaser

Dear Mr. Levine:

I am responding to your letter to Chancellor Klein regarding Debbie Almontaser. Although I do not agree with your view that Ms. Almontaser was discharged, or that her first amendment rights were violated, I would be happy to speak to you on the phone. Please know, however, that the Executive Director of the Office of Portfolio Development has been working with your client to find an appropriate placement for her. In the meantime, she continues to be paid the salary of a principal.

You can reach me at 212 374 0220.

Very truly yours,

Michael Best
General Counsel

Exhibit 6



Council of School Supervisors & Administrators, New York City

New York State Federation of School Administrators
Local 1 American Federation of School Administrators, AFL-CIO

October 25, 2007

President
Ernest A. Logan

Executive Vice President
Peter J. McNally

First Vice President
Randi Herman, Ed.D.

Secretary
Michael DeStefano

Treasurer
Laverne Burrowes

Vice Presidents
Mark Cannizzaro
Alexander Castillo
Robert Kazanowitz
Richard Oppenheimer
Nilda J. Rivera

Executive Director Operations
Anita Gomez-Palacio

Executive Director Field Services
Audrey Fuentes

Joel Klein
Chancellor
New York City Department
Of Education
52 Chambers Street – 2nd Floor
New York, New York 10007

Dear Chancellor Klein:

The controversy surrounding Kahlil Gibran and Principal
Debbie Almontaser has been unfortunate and unfair. Debbie is a
respected educator and played a significant role in developing the
school. She has every right to apply for the principalship. Her
application should be fairly considered and she should not be
peremptorily excluded from consideration in the C-30 selection
process.

Very truly yours,

Ernest A. Logan
President

EL/amp

16 Court Street
Brooklyn, NY 11241-1003

718/852-3000  Tel
718/403-0278  Fax

www.csa-nyc.org

Exhibit 7

Law Office of
**ALAN LEVINE**

99 Hudson Street, 14th Floor
New York, New York 10013

Tel: (212) 739-7506
Fax: (212) 431-4276

October 26, 2007

**By Telefax**
Chancellor Joel Klein
Department of Education
52 Chambers Street
New York, N.Y. 10007

re: Debbie Almontaser

Dear Chancellor Klein:

As you know, Ms. Almontaser has submitted her application to become the principal of the Khalil Gibran International Academy. However, an October 18, 2007 story in the New York Times cites David Cantor, identified in the story as your "spokesman," to the effect that Ms. Almontaser "would not be placed as principal at the school." Does that mean that her application will not receive the same consideration as other applicants for that position? If so, what is the basis for denying her such consideration?

I look forward to your prompt response.

Yours sincerely,

Alan Levine

cc: Michael Best, Esq.

Exhibit 8

**Law Office of**
# ALAN LEVINE

99 Hudson Street, 14th Floor
New York, New York 10013

Tel: (212) 739-7506
Fax: (212) 431-4276

November 16, 2007

**By Telefax**
**212-374-5596**
Michael Best, Esq.
Department of Education
52 Chambers Street
New York, N.Y. 10007

re: Debbie Almontaser

Dear Mr. Best:

We have now learned that interviews for the position of principal at the Khalil Gibran International Acaademy will be conducted next Tuesday by the Level I Committee pursuant to the Chancellor's C-30 Regulation and that Ms. Almontaser is not one of those to be interviewed.

It is our view that the refusal to interview her for the position violates her First Amendment rights. Accordingly, we will file suit on Monday in the United States District Court for the Southern District of New York and will seek a prompt order requiring that Ms. Almontaser's application be referred to the Level I Committee for appropriate consideration. Please advise me who I should notify when I know if and when a Judge will hear argument.

Yours sincerely,

Alan Levine

Exhibit 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

DEBBIE ALMONTASER,

                                   Plaintiff,

              -against-

NEW YORK CITY DEPARTMENT OF EDUCATION;
JOEL KLEIN, individually and in his official capacity as
Chancellor of the New York City Department of
Education; ROSEMARY STUART, individually and in
her official capacity as Community Superintendent of
District 15 and Hiring Manager; CITY OF NEW YORK;
MICHAEL BLOOMBERG, individually and in his official
capacity as Mayor of the City of New York; DENNIS
WALCOTT, individually and in his official capacity as
Deputy Mayor for Education and Community
Development,

                                   Defendants.

------------------------------------------------------------------------x

CV

**PLAINTIFF'S FIRST
REQUEST FOR
PRODUCTION
OF DOCUMENTS AND
INTERROGATORIES -
EXPEDITED**

        PLEASE TAKE NOTICE THAT, pursuant to Rule 34 of the Federal Rules of

Civil Procedure and Local Rule 26.3, except that plaintiff requests this production on an

expedited basis as may be directed by the Court, plaintiff demands that defendants identify and

produce the documents requested herein at the offices of Beldock Levine & Hoffman LLP, 99

Park Avenue, New York, New York, and, pursuant to Rule 33 of the Federal Rules of Civil

Procedure, also on an expedited basis as may be directed by the Court, answer the following

interrogatories.

## GENERAL INSTRUCTIONS

1.     Production in response to these requests must include all documents known to defendants, their agents and employees, including their attorneys and all persons acting on their behalf or under their control.

2.     These requests are continuing in nature.  If, after answering, defendants obtain any further information responsive to these requests, a supplementary response is required.

3.     If any document is claimed to be protected from production because of a privilege, provide the following information with respect to each such document:

      a.     Type of document (e.g., letter, memoranda, etc.).

      b.     Name of author or preparer.

      c.     Name of recipient.

      d.     Date of recording or preparation.

      e.     Description of the subject matter and content of the document sufficient to identify it.

      f.     The reason for the claim of privilege.

4.     With respect to each document requested herein which has been lost, destroyed or otherwise disposed of since its preparation or receipt, provide the following information separately as to each such document:  type of document; general description of the subject matter; author; recipient(s) or addressee(s); date; last custodian of the document or copies thereof; the full particulars or circumstances whereby the document was lost, destroyed or otherwise disposed of.

5.    Unless otherwise specified, the relevant time period covered by this request is from August 1, 2007 to the present.

6.    For the purposes of these requests, the uniform definitions set forth in Local Rule 26.3 shall apply. "Documents" and "communications" include e-mail communications, electronic Open Hire records and screens, and any other electronic records in defendants' possession relating to the subject matter of this action..

## SCHEDULE OF DOCUMENTS REQUESTED

1.    Communications including emails to and from defendant Rosemary Stuart and/or individuals in the New York City Department of Education ("DOE"), the Mayor's Office or any other City department or office, or New Visions for Public Schools, concerning or relating to the issues in this action involving plaintiff, Khalil Gibran International Academy ("KGIA"), the "intifada" t-shirts and/or the C-30 process for the position of principal at KGIA.

2.    Documents concerning or relating to the posting of the principal position at KGIA, including documents reflecting when it was posted, when it was removed from posting and when it was restored.

3.    Documents reviewed by the Hiring Manager in connection with the C-30 process for the position of principal at KGIA.

4.    Documents reviewed by the Hiring Manager in connection with the consideration of plaintiff's application for the position of principal at KGIA.

5.    Documents concerning or relating to the C-30 process for the KGIA principal position including but not limited to notes, memoranda, etc.

6.    Open Hire and Talent Office records concerning or relating to the C-30 process

for the KGIA principal position.

7.    Applications of the candidates referred for evaluation by the Level 1 Committee.

8.    Documents reflecting the identity of the Level 1 Committee members.

9.    Documents reflecting:

a.    the number of project managers/interim acting principals who apply to be principal of their schools;

b.    the percentage of these applicants who are interviewed for the position;

c.    the percentage of these applicants who are appointed principal.

10.    Communications including emails to and from defendants and/or individuals in the New York City Department of Education ("DOE"), the Mayor's Office or any other City department or office, or New Visions for Public Schools, concerning or relating to the issues in this action involving plaintiff, Khalil Gibran International Academy ("KGIA"), the "intifada" t-shirts and/or the C-30 process for the position of KGIA principal.

11.    Documents concerning or relating to the issues in this action including but not limited to correspondence, memoranda, statements, press releases, documents in the DOE Press Office, copies of news articles and press coverage, transcripts, etc.

## INTERROGATORIES

12.    Identify all individuals involved in the C-30 process or otherwise who participated in the consideration of plaintiff's application for the KGIA principal position.

13.    Identify all individuals consulted by the Hiring Manager or who provided information to the Hiring Manager in connection with the C-30 process for the KGIA principal position.

Dated:  New York, New York
        November 19, 2007

                             _____

                             ALAN LEVINE (AL 5297)
                             99 Hudson Street- 14 Floor
                             New York, NY 10013
                             (212) 739-7506

                             BELDOCK LEVINE & HOFFMAN LLP

                             By:_____
                              Cynthia Rollings (CR 6469)
                             99 Park Avenue
                             New York, NY 10016
                             (212) 490-0400

                             *Attorneys for Plaintiff*

TO:  Corporation Counsel of the City of New York
     100 Church Street
     New York, NY 10007

     *Attorneys for Defendants*

Exhibit 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

DEBBIE ALMONTASER,

                              Plaintiff,

        -against-                                          **NOTICE OF DEPOSITION**
                                                          **BY VIDEOTAPE**


NEW YORK CITY DEPARTMENT OF EDUCATION;
JOEL KLEIN, individually and in his official capacity as
Chancellor of the New York City Department of Education;
ROSEMARY STUART, individually and in her official
capacity as Community Superintendent of District 15 and
Hiring Manager; CITY OF NEW YORK; MICHAEL
BLOOMBERG, individually and in his official capacity as
Mayor of the City of New York; DENNIS WALCOTT,
individually and in his official capacity as Deputy Mayor for
Education and Community Development,

                              Defendants.
-----------------------------------------------------------------------x

        PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, plaintiffs will take the deposition upon oral examination of defendant ROSEMARY

STUART, as a party defendant in this action, under oath, on an expedited basis on November 20,

2007 at 10:00 a.m., or such other date as may be scheduled by the Court or the parties before a

Notary Public of the State of New York or some other officer authorized to administer oaths, at

the office of Beldock Levine & Hoffman LLP, 99 Park Avenue, New York, New York, with

respect to all matters relevant to the subject matter involved in this action.  The deposition will

continue from day to day thereafter until completed.

        PLEASE TAKE FURTHER NOTICE that deponent is required to produce at the

deposition any and all documents including but not limited to email communications and Open

1

Hire electronic records pertaining to plaintiff and the C-30 process for the principal position at

the Khalil Gibran International Academy all as set forth more fully in plaintiff's First Request for

Documents as well as all documents reviewed in preparation for the deposition.

PLEASE NOTE THE DEPOSITION WILL BE VIDEOTAPED.  THE

VIDEOTAPE OPERATOR IS VERITEXT LLC, 200 OLD COUNTRY ROAD, MINEOLA,

NEW YORK 11501.

Dated:  New York, New York
     November 19, 2007

ALAN LEVINE (AL 5297)

_____

99 Hudson Street- 14th Floor
New York, New York 10013
(212) 739-7506

BELDOCK LEVINE & HOFFMAN LLP

By:_____
Cynthia Rollings (CR 6469)
Claire Norins (CN 2821)
99 Park Avenue - Suite 1600
New York, NY 10016
(212) 490-0400

TO: Corporation Counsel of the City of New York
    100 Church Street
    New York, New York 10007

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

DEBBIE ALMONTASER,

                                        Plaintiff,

              -against-                                    **NOTICE OF DEPOSITION
                                                          BY VIDEOTAPE**

NEW YORK CITY DEPARTMENT OF EDUCATION;
JOEL KLEIN, individually and in his official capacity as
Chancellor of the New York City Department of Education;
ROSEMARY STUART, individually and in her official
capacity as Community Superintendent of District 15 and
Hiring Manager; CITY OF NEW YORK; MICHAEL
BLOOMBERG, individually and in his official capacity as
Mayor of the City of New York; DENNIS WALCOTT,
individually and in his official capacity as Deputy Mayor for
Education and Community Development,

                                        Defendants.

-----------------------------------------------------------------------x

        PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, plaintiffs will take the deposition upon oral examination of defendant JOEL KLEIN,

as a party defendant in this action, under oath, on an expedited basis on November 21, 2007 at

10:00 a.m., or such other date as may be scheduled by the Court or the parties before a Notary

Public of the State of New York or some other officer authorized to administer oaths, at the

office of Beldock Levine & Hoffman LLP, 99 Park Avenue, New York, New York, with respect

to all matters relevant to the subject matter involved in this action. The deposition will continue

from day to day thereafter until completed.

        PLEASE TAKE FURTHER NOTICE that deponent is required to produce at the

deposition any and all documents including but not limited to email communications and Open

1

Hire electronic records pertaining to plaintiff and the C-30 process for the principal position at the Khalil Gibran International Academy all as set forth more fully in plaintiff's First Request for Documents as well as all documents reviewed in preparation for the deposition.

PLEASE NOTE THE DEPOSITION WILL BE VIDEOTAPED. THE VIDEOTAPE OPERATOR IS VERITEXT LLC, 200 OLD COUNTRY ROAD, MINEOLA, NEW YORK 11501.

Dated: New York, New York
       November 19, 2007

ALAN LEVINE (AL 5297)

_____
99 Hudson Street- 14th Floor
New York, New York 10013
(212) 739-7506

BELDOCK LEVINE & HOFFMAN LLP

By:_____
Cynthia Rollings (CR 6469)
Claire Norins (CN 2821)
99 Park Avenue - Suite 1600
New York, NY 10016
(212) 490-0400

TO: Corporation Counsel of the City of New York
    100 Church Street
    New York, New York 10007

2