CV-07-10444 (SHS) (FM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBBIE ALMONTASER,

                                                         Plaintiff,

-against-


NEW YORK CITY DEPARTMENT OF EDUCATION;
JOEL KLEIN, individually and in his official capacity as
Chancellor of the New York City Department of
Education; ROSEMARY STUART, individually and in
her official capacity as Community Superintendent of
District 15 and Hiring Manager; CITY OF NEW YORK;
MICHAEL BLOOMBERG, individually and in his
official capacity as Mayor of the City of New York;
DENNIS WALCOTT, individually and in his official
capacity as Deputy Mayor for Education and Community
Development,

                                                         Defendants.


**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION**


*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, New York 10007*
*Of Counsel: Paul Marks*
*Tel: (212) 212-788-0884*
*Law Manager No. 2007-038024*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT

    POINT I

        PLAINTIFF IS NOT ENTITLED TO AN INJUNCTION THAT PROHIBITS THE COMMUNITY SCHOOL DISTRICT SUPERINTENDENT AND THE CHANCELLOR FROM EXERCISING POWERS GRANTED TO THEM BY THE NEW YORK EDUCATION LAW.. ................................................................................................ 5

    POINT II

        PLAINTIFF CANNOT DEMONSTRATE IRREPARABLE HARM IF THE INJUNCTION IS NOT GRANTED.. ............................................................................... 6

    POINT III

        PLAINTIFF CANNOT DEMONSTRATE A CLEAR LIKELIHOOD OF SUCCESS ON THE MERITS. ................................................................................................. 7

CONCLUSION.............................................................................................................................. 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

DEBBIE ALMONTASER,

                        Plaintiff,

    -against-                              CV-07-10444 (SHS) (FM)

NEW YORK CITY DEPARTMENT OF EDUCATION;
JOEL KLEIN, individually and in his official capacity as
Chancellor of the New York City Department of
Education; ROSEMARY STUART, individually and in her
official capacity as Community Superintendent of District
15 and Hiring Manager; CITY OF NEW YORK;
MICHAEL BLOOMBERG, individually and in his official
capacity as Mayor of the City of New York; DENNIS
WALCOTT, individually and in his official capacity as
Deputy Mayor for Education and Community
Development,

                        Defendants.

------------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION**

**PRELIMINARY STATEMENT**

Plaintiff, who is currently employed by the New York City Department of Education ("DOE") as Director of Special Projects in the DOE's Office of School and Youth Development, brings this action pursuant to 42 U.S.C. §1983 and New York law against the DOE, the City of New York and four individual defendants: Joel Klein, the Chancellor of the City School District of the City of New York, Rosemary Stuart, the Superintendent of Community School District 15, Mayor Michael Bloomberg and Dennis Walcott, Deputy Mayor for Education and Community Development. Plaintiff asserts four federal claims and three state law claims. Her federal claims

are: (1) a First Amendment claim that defendants DOE, City of New York, Bloomberg, Klein and Walcott violated plaintiff's right to free speech by allegedly forcing her to resign as interim-acting principal of the Khalil Gibran International Academy ("KGIA") on August 10, 2007 in alleged retaliation for statements she made to a New York Post reporter that were published in the Post on August 6, 2007; (2) a First Amendment claim that all of the defendants violated plaintiff's right to free speech by not selecting plaintiff to be interviewed for the position of principal at KGIA, also in alleged retaliation for plaintiff's statements to the Post reporter that were published in the Post on August 6, 2007; (3) a claim under the Fourteenth Amendment that defendants City, Klein, Bloomberg and Walcott deprived plaintiff of a property interest and a liberty interest by allegedly forcing plaintiff to resign as interim-acting principal of KGIA. Plaintiff's state claims are: (1) a claim under Article I, Section 8 of the New York State Constitution that defendants retaliated against her for her exercise of her right to free speech; (2) a breach of contract claim, which appears to be premised on defendants' (with the exception of defendant Stuart) alleged breach of a promise to plaintiff to find her a position comparable to that of interim-acting principal of KGIA; and (3) a claim against all defendants for intentional infliction of emotional distress.

Plaintiff moves for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking an order: "(a) affording plaintiff a full and fair opportunity to be reviewed and considered for the position of principal at Khalil Gibran International Academy according to the principles of merit and fitness, as provided in Chancellor's Regulation C-30, and including final consideration by a disinterested person, pending the final determination of this action; and (b) enjoining and restraining defendants from proceeding pursuant to Chancellor's Regulation C-30 beyond the Level I Committee or to otherwise select, assign or appoint a

principal at the Khalil Gibran International Academy until plaintiff is afforded such consideration." See Order to Show Cause, dated November 19, 2007. Plaintiff's motion is based solely on her two First Amendment retaliation claims that are identified above. Defendants will therefore respond only plaintiff's arguments on those claims, and not address at this time the other claims contained in the complaint in this action.

## ARGUMENT

### Standard for the Granting of a Preliminary Injunction

To obtain a preliminary injunction, plaintiff must show: (1) that she will be irreparably harmed if the injunction is not granted; and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in her favor. Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999); Time Warner Cable v. Bloomberg L.P., 118 F.3d 917, 923 (2d Cir. 1997) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979). Because the injunction requested by plaintiff will stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, namely, the selection of a principal for KGIA in accordance with the C-30 process and New York Education Law §2590-f(1)(e), plaintiff must establish a likelihood of success on the merits. Forest City Daly Hous., Inc., 175 F.3d at 149. Moreover, because the injunction will alter rather than maintain the status quo, by, among other things, directing defendants to interview plaintiff for the position of KGIA principal, and prohibiting defendant Stuart from exercising the power granted to her by New York Education Law §2590-f(1)(e) to appoint or reject a candidate for principal screened by the C-30 Level I Committee and prohibiting Chancellor Klein from exercising the power granted to him by New York Education Law §2590-i(2)(c) to reject a candidate for principal approved by a Community School District

Superintendent, plaintiff must show a "clear" or "substantial" likelihood of success on the merits of her First Amendment claims. See Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233 (2d Cir. 1999) (per curiam); Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996).[1] As set forth below, plaintiff's motion for a preliminary injunction should be denied because: (1) she cites no authority for this Court to issue an injunction prohibiting the Superintendent of Community School District 15 and the Chancellor from exercising the powers granted to them by the New York Education Law; (2) she cannot show that she will suffer irreparable harm if the injunction is not granted; and (3) she cannot establish a clear likelihood of success on the merits of her First Amendment claim for two reasons: (a) plaintiff's statement to the New York Post that was published on August 6, 2007 was made as part of her official duties as interim-acting principal of KGIA, and thus, under Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006), does not constitute protected speech; and (b) assuming that the Court were to find that Garcetti does not render plaintiff's speech to be unprotected, and that she spoke as a citizen on a matter of public concern, plaintiff cannot show a clear likelihood of success on her argument that her speech is protected under the Pickering balancing test.

---

[1] Curiously, Plaintiff's Memorandum of Law in Support of Motion for Injunctive Relief ("Plaintiff's Memo of Law") ignores the standard applicable to a motion seeking a mandatory injunction and recites the standard applicable to an ordinary preliminary injunction motion.

## POINT I

### PLAINTIFF IS NOT ENTITLED TO AN INJUNCTION THAT PROHIBITS THE COMMUNITY SCHOOL DISTRICT SUPERINTENDENT AND THE CHANCELLOR FROM EXERCISING POWERS GRANTED TO THEM BY THE NEW YORK EDUCATION LAW.

Community School District Superintendents in the New York City School District have the powers and duties, to among other things: "appoint or reject the principal candidates screened by screening committees, in accordance with procedures and criteria prescribed by chancellor's regulations, and subject to the chancellor's power to reject such appointments pursuant to section twenty-five hundred ninety-h of this article." See New York Education Law §2950-f(1)(e). Pursuant to New York Education Law §2590-i(2)(c), "[i]n the case of schools under the jurisdiction of the community school districts, a candidate [for principal] approved by a community superintendent may nonetheless, before assuming the position, be rejected by the chancellor for cause." In seeking a preliminary injunction directing that her application for the position of principal at KGIA be afforded "final consideration by a disinterested person," and presumably plaintiff does not view either defendant Stuart or defendant Klein as "disinterested," plaintiff seeks to prohibit these defendants from exercising the powers granted to them by the New York State Education Law. There is simply no authority for the proposition that a court may prohibit a government official from exercising his or her statutorily mandated powers. For this reason alone, the Court should deny plaintiff's motion for a preliminary injunction.

## POINT II

### PLAINTIFF CANNOT DEMONSTRATE THAT SHE WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS NOT GRANTED.

Plaintiff is evidently under the misimpression that she can satisfy her burden of showing that she will suffer irreparable harm by her mere allegation, without offering any evidence, that defendants violated her First Amendment right of free speech by forcing her to resign as interim-acting principal of KGIA on August 10, 2007 and by not selecting her to be interviewed by the Level I Committee for the KGIA principal position, both allegedly in retaliation for her statements that were published in the New York Post on August 6, 2007. See Plaintiff's Memo, pp. 3-4. This is simply not the law. To be sure, the Supreme Court has observed that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). However, plaintiff is still required to present evidence that she, in fact, has sustained a loss of her First Amendment freedoms, and will suffer another loss of such freedoms if the injunction is not granted.

The Second Circuit has held that in a First Amendment retaliation action by a public employee, the employee must "allege a clearcut infringement of first amendment rights, which, absent preliminary injunctive relief, either has occurred or will occur in the future." American Postal Workers Union v. United States Postal Service, 766 F.2d 715, 722 (2d Cir. 1985). A showing of theoretical or conjectural harm is insufficient. See Latino Officers Association v. Safir, 170 F.3d 167, 171 (2d Cir. 1999). Moreover, plaintiff "must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of free speech rights." Bronx Household of Faith v. Bd. of Education., 331 F.3d 342, 350 (2d Cir. 2003). In the present case, plaintiff cannot

establish irreparable harm for two reasons. First, she will not be harmed irreparably if an injunction is not granted and someone other than herself is selected as the principal of KGIA. Plaintiff will not have been prevented from being considered for a principal position at every DOE school - - only KGIA. She is free to apply for any principal position for which she possesses the minimum qualifications. She has chosen not do so, because, according to plaintiff, she has "no interest in applying for any other" principal position. See Plaintiff's November 27, 2007 Deposition ("PD") at pp. 89-90.[2] However, merely not being selected for one principal position does not constitute irreparable harm.

Plaintiff also cannot establish irreparable harm because, as set forth in Point III below, plaintiff cannot establish that a clear violation of her First Amendment right to free speech has occurred, or that it will occur. That is because plaintiff cannot demonstrate that: (1) her statements to the New York Post that were published on August 6, 2007 are protected by the First Amendment; and (2) that defendants forced her to resign as interim-acting principal and did not select her for the principal position at KGIA because of those statements.

### POINT III

### PLAINTIFF CANNOT DEMONSTRATE A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

Plaintiff cannot establish a clear likelihood of success on her First Amendment retaliation claim because: (1) plaintiff's statement to the New York Post that was published on August 6 2007 was made as part of her official duties as interim-acting principal of KGIA, and thus, under Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006), does not constitute protected speech; and (2)

---

[2] The transcript of plaintiff's November 27, 2007 deposition, and the exhibits that were marked at that deposition, with the exception of the complaint in this action and the declaration submitted by plaintiff in support of her preliminary injunction motion, are annexed to the Declaration of Mario Frangiose, dated November 29, 2007.

assuming that the Court were to find that Garcetti does not render plaintiff's speech to be unprotected, and that she spoke as a citizen on a matter of public concern, plaintiff cannot show a clear likelihood of success on her argument that her speech is protected under the Pickering balancing test.

To state a First Amendment retaliation claim under §1983, a public employee must allege: (1) that the speech at issue was protected; (2) that she suffered an adverse employment action constituting conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) a causal connection between the protected speech and the adverse employment action. Zelnick v. Fashion Institute of Techology, 464 F.3d 217, 225 (2d Cir. 2006); Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir. 2005); Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). Ruotolo v. City of New York, 2005 U.S. Dist. LEXIS 10187 *21-25 (S.D.N.Y. May 25, 2005).

**Plaintiff's statements to the New York Post Reporter that were published on August 6, 2007 were made pursuant to her official duties as interim-acting principal of KGIA and thus are not protected by the First Amendment.**

In Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), the Supreme Court held that when "public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 126 S. Ct. at 1960. See also Ruotolo v. City of New York, 03 Civ. 5045 (SHS), 2006 U.S. Dist. LEXIS 49903 at * 10-*11 (S.D.N.Y. July 19, 2006); Benvenisti, 2006 U.S. Dist. LEXIS 73373, at *24-*26 (S.D.N.Y. September 23, 2006). The rationale is that "government employers, like private employers, need a significant degree of control over their employees' words and actions" to operate efficiently and provide necessary services. Garcetti, 126 S. Ct. at 1958. As the Supreme Court observed:

> Ceballos did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings. In the same way, he did not speak as a citizen by writing a memo that addressed the proper disposition of a criminal case. When he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee.

Id. at 1960.

In the present case, there is no question that plaintiff's statement to the New York Post reporter that was published on August 6, 2007 was made pursuant to her official duties as the interim-acting principal of KGIA, and thus falls squarely within the parameters of employee speech which Garcetti held is not protected. Plaintiff's attempts to evade the reach of Garcetti, by asserting that "Almontaser's words to the Post reporter were public words spoken in her capacity as a private citizen speaking on a matter of public concern, as opposed to pursuant to her official job duties," see Plaintiff's Memo of Law, p. 8, is at odds with reality.

The interview of plaintiff on August 5, 2007, which resulted in the Post article on August 6, 2007, was one of a series of interviews that plaintiff had given to members of the news media in connection with her duties either as Project Director or interim-acting principal of KGIA. Plaintiff became Project Director for KGIA on February 12, 2007 and was named interim-acting principal on or about July 2, 2007. At her deposition, plaintiff testified that there were no differences in her job duties between the two positions (PD at pp. 40-42).

The discovery conducted to date in this action reveals that before August 5, 2007, plaintiff was interviewed by members of the news media in connection with her work at KGIA on at least eight occasions: (1) she was interviewed by Elissa Gootman of the New York Times, which resulted in a February 13, 2007 article quoting plaintiff (PD at pp. 18-20, and Exhibit C introduced therein); (2) she was interviewed by Sarah Garlend of the New York Sun in March 2007 (PD at p. 20); (3) she was interviewed by Nahal Toosi of the Associated Press, which

-9-

resulted in an April 16, 2007 Associated Press story quoting plaintiff (PD at pp. 23-25, and Exhibit D introduced therein); (4) she was interviewed by Julie Bosman of the New York Times, which resulted in a May 4, 2007 article quoting plaintiff (PD at pp. 26-28, and Exhibit E introduced therein); (5) she was interviewed by Jeanine Ramirez of the television station New York 1, and the interview was aired and also resulted in an online May 4, 2007 article quoting plaintiff (PD at pp. 28-30, and Exhibit F introduced therein); (6) she was quoted in an article appearing in the New York Post on May 5, 2007 (PD at pp. 30-31, and Exhibit G introduced therein); (7) she was interviewed by Dana Rubinstein of The Brooklyn Paper, which resulted in a May 19, 2007 article in that paper article quoting plaintiff (PD at pp. 31-34, and Exhibit H introduced therein); and (8) she was interviewed by the Daily News Editorial Board in May 2007 (PD at pp. 38-39). Plaintiff testified at her deposition that shortly after the first interview, that by Elissa Gootman of the Times, plaintiff attended a meeting with members of the DOE Press Office and others to formulate strategy in handling media inquiries about KGIA (PD, at pp. 20-22.

Plaintiff also testified at her deposition that for all the interviews listed above, perhaps with the exception of the first interview and the sixth interview (which she says did not recall), she spoke to either Melody Meyer or David Cantor of the DOE Press Office to coordinate the interview, and on most of these occasions either Mr. Cantor or Ms. Meyer would prepare her for, or provide her with an overview of, the interview. For virtually all of the interviews, either Mr. Cantor or Ms. Meyer would be present or on the telephone line while the interview was being conducted (PD at pp. 18-33, 34-36).

Plaintiff's contact with the news media was not limited to interviews. She also submitted an Op-Ed piece which appeared in the Daily News on May 20, 2007 (PD at pp. 36-37, and

Exhibit I introduced therein). As with the interviews, the submission of the Op-Ed piece was coordinated with the DOE Press Office. Indeed, before the piece was submitted to the Daily News, Mr. Cantor edited it to make it more succinct and to meet space limitations. Id.

Plaintiff testified that on Friday, August 3, 2007, Ms. Meyer contacted her, indicating that both ABC News and the New York Post wished to interview her (PD at p. 50). The New York Post request was followed by a list of proposed questions from a reporter, Chuck Bennett, and forwarded to Ms. Meyer on August 5, 2007 for plaintiff's review (PD at p. 51; Complaint, ¶39). Plaintiff testified that she drafted responses to Mr. Bennett's questions, and that Ms. Meyer forwarded them to Mr. Bennett. Plaintiff then had two conversations with Ms. Meyer and one with Mr. Cantor in preparation for the interview with Mr. Bennett. Mr. Bennett then interviewed plaintiff for approximately ten minutes, with Ms. Meyer on the phone line (PD, at pp. 51-55). On August 6, 2007, an article appeared in the New York Post in which plaintiff was quoted (PD at p. 56, and Exhibit J introduced therein). When asked at her deposition whether the quotes contained in that article accurately reflected what she stated to Mr. Bennett, plaintiff testified that some were accurate and others did not include the entirety of her statements (PD at p. 56).

There is no question that both before and on August 5, 2007, it was clearly part of plaintiff's job duties to be interviewed by members of the news media about KGIA or KGIA-related issues, and that the statements that she made to the news media, both before and on August 5, 2007, were made in her capacity as either project director or interim-acting principal of KGIA. When plaintiff made her statements on August 5, 2007 to the Post, after being prepared for that interview by several conversations with Ms. Meyer and Mr. Cantor, and with Ms. Meyer on the telephone line during that interview, she spoke in her capacity as interim-acting principal of KGIA. Her attempt to falsely portray her statements to the Post as being

made in her capacity as a "private citizen" should be rejected by this Court. Accordingly, because under Garcetti, plaintiff's speech is not protected by the First Amendment, she cannot establish a clear likelihood of success on the merits.

**Even if plaintiff's statements to the Post are not rendered unprotected by Garcetti, she cannot establish a clear likelihood of success on the merits of her claim that her speech is protected under the Pickering balancing test.**

In Pickering v. Board of Education, 391 U.S. 563 (1968), the Supreme Court established a two-part balancing test for determining whether speech is constitutionally protected. The issue of whether speech is protected is one of law for the court to determine. Lewis v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999); see also Connick v. Myers, 461 U.S. 138, 148, n.7 (1983). Under this test, a court must first decide whether the expression constitutes speech on "a matter of public concern." Pickering, 391 U.S. at 568; Connick, 461 U.S. at 146; Rankin v. McPherson, 483 U.S. 378, 384 (1987). If the speech addresses a matter of public concern, the court then balances "the interests of the [employee] as a citizen, on commenting upon matters of public concern and the interest of the State, as employer, in promoting the efficiency of the public service it performs through its employees." Pickering, 391 U.S. at 568; see also Connick, 461 U.S. at 150; Benvenisti v. City of New York, 2006 U.S. Dist. LEXIS 73373 at *22 n.8 (S.D.N.Y. September 23, 2006). When a plaintiff's speech on a matter of public concern is sufficiently disruptive to government operations so that the disruption outweighs the value of the speech, a public employer may take an adverse employment action against the employee. See Blackman v. New York City Transit Authority, 491 F.3d 95 (2d Cir. 2007). Sheppard v. Beerman, 317 F.3d 351, 355 (2d Cir. 2003); Even if there is no actual disruption, the government employer may act to prevent potential disruption if the employer reasonably believes that the employee's speech threatens to interfere with government operations. Waters v. Churchill, 511 U.S. 661, 672-74 (1994); Jeffries v. Harelston, 52 F.3d 9, 12 (2d Cir 1995). Indeed, "the extent of the

injury caused by the employee's speech need not be actual; rather, the government's burden is just to show that the speech threatened to interfere with government operations." Jeffries, 52 F.3d at 12 (citing, Waters, 511 U.S. at 673-74). Moreover, the Supreme Court has granted "substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern." Waters, 511 US at 673; see Jeffries, 52 F.3d at 12.

Even assuming that Garcetti does not render plaintiff's speech unprotected, and that plaintiff's statements that were published in the Post on August 6, 2007 addressed a matter of public concern, plaintiff, at this stage of the litigation of this case, cannot establish a clear likelihood of success on her claim that her speech is protected under the Pickering balancing test. That is because there is an issue of fact as to whether plaintiff's statements caused disruption, and the factual record of this case is not sufficiently developed for the Court to find that defendants are unable to satisfy their burden of showing that her statements threatened to interfere with the operation of the school.

As the Second Circuit recognized in Melzer v. Board of Education, 336 F.3d 185, 199 (2d Cir. 2003), disruption caused by parents of students at a public school (in that case, furor over a teacher's participation in activities of the North American Man/Boy Love Association) in reaction to speech by a public school teacher or official is properly considered in the Pickering balancing test: "Parents are not outsiders seeking to heckle Melzer into silence, rather they are participants in public education, without whose cooperation public education as a practical matter cannot function. Any disruption created by parents can be fairly characterized as internal disruption to the operation of the school, a factor which may be accounted for in the balancing

test and which may outweigh a public employee's rights. In consequence, we do not perceive an impermissible heckler's veto implicated in this case." Melzer, 336 F.3d at 199.

Plaintiff argues that in the present case, there is no evidence that parents of KGIA students had a negative reaction to her statements to the Post. See Plaintiff's Memo of Law, pp. 13-14. However, that statement is contradicted by plaintiff's resignation letter, which is annexed as Exhibit "G" to the complaint. In her letter, she stated, in referring to the negative reaction to her statements: "their intolerant and hateful tone *has come to frighten some of the parents and incoming students.*" (emphasis added).[3] Certainly, if the parents of incoming KGIA students and the students themselves were frightened, upset, or alarmed by plaintiff's statements to the Post or by the negative reaction to plaintiff's statements, that must be taken into account in the Pickering balancing test and would outweigh any interest plaintiff has in making her statements to the Post. Thus, plaintiff cannot establish a clear likelihood of success on the merits of her claim that she engaged in speech protected by the First Amendment.

---

[3] At her deposition, plaintiff sought to disavow this statement, saying that it was not true, and that she made it at friend's suggestion to "save face." (PD at pp. 84-88).

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiff's motion for a preliminary injunction, and grant such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          November 29, 2007

                                MICHAEL A. CARDOZO
                                Corporation Counsel of the
                                 City of New York
                                Attorney for Defendants
                                100 Church Street, Room 2-101
                                New York, New York 10007
                                (212) 788-0884

                      By: _____
                                PAUL MARKS (PM 9558)
                                Assistant Corporation Counsel

PAUL MARKS,
MARIO FRANGIOSE,
  Of Counsel.