UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DEBBIE ALMONTASER,

                               Plaintiff,

    -against-                                         CV 07-10444 (SHS) (FM)

                                                                               ECF CASE

NEW YORK CITY DEPARTMENT OF EDUCATION;
JOEL KLEIN, individually and in his official capacity as
Chancellor of the New York City Department of Education;
ROSEMARY STUART, individually and in her official
capacity as Community Superintendent of District 15 and
Hiring Manager; CITY OF NEW YORK; MICHAEL
BLOOMBERG, individually and in his official capacity as
Mayor of the City of New York; DENNIS WALCOTT,
individually and in his official capacity as Deputy Mayor
for Education and Community Development,

                               Defendants.
------------------------------------------------------------------------x

### PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR
### PRELIMINARY INJUNCTIVE RELIEF

      Plaintiff Debbie Almontaser's Order to Show Cause and Motions for a Preliminary Injunctive Relief seeks a full and fair opportunity for plaintiff to be reviewed and considered for the position of principal at Khalil Gibran International Academy ("KGIA") according to principals of merit and fairness, as provided in Chancellor's Regulation C-30, and including final consideration by a disinterested person, pending the final determination of this action. (See Order to Show Cause at ¶ (a)). Plaintiff submits this Supplemental Memorandum of Law on the issue of plaintiff's entitlement to an impartial decision maker.

**ARGUMENT**

**PLAINTIFF IS ENTITLED TO IMPARTIAL CONSIDERATION OF HER APPLICATION FOR RE-HIRE**

If the Court finds that the Community Superintendent determined not to refer plaintiff's application to the Level I Committee, not because it lacked merit, but because she was influenced by the Chancellor's expressed view that plaintiff would not be placed in the position of principal at KGIA (see Exhibit H attached to Complaint, October 18, 2007 New York Times article), then the Court should order that the application be considered by the Committee. Beyond that, fundamental fairness, and established principles of due process, require that, once Level I Committee consideration is completed, the Court must appoint an impartial decision maker to select the KGIA principal. Assuming a ruling in plaintiff's favor on the denial of a Level I interview, it is clear that neither the Community Superintendent nor the Chancellor can fairly consider plaintiff's application at the next stage. If retaliatory motive against plaintiff prevented her from being recommended for an interview by the Level 1 Committee, then that same bias will prevent defendants from selecting her as principal.

Plaintiff has a right to an impartial decision-maker on her application on two interrelated grounds. First, the cases all agree that a decision made by a public body is required to be made by an impartial decision-maker. Hudson v. Chicago Teachers Union, 475 U.S. 292, 309 (1986) ("An impartial decision maker is a requirement of administrative procedure."); Schweiker v. McClure, 456 U.S. 188, 195-196 (1982) ("As this court has repeatedly recognized, due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities"); Daye v. Attorney General of State of New York, 696 F.2d 186, 196 (2d Cir.1982) ("Under the due process clause there is a well developed right established in a long line of cases, to a trial before an unbiased judge. The fundamental nature of this right is demonstrated by the fact that

2

not even the appearance of bias is tolerated."); Krentz v. Robinson, 228 F.3d 897, 905 (8th Cir. 2000) ("The right to a fair and impartial decision-maker forms an essential part of the protection afforded by the due process clause."); Padberg v. McGrath-McKeachnie, 203 F.Supp.2d 261, 287 (E.D.N.Y.2002) ("Due process requires a 'fair trial in a fair tribunal' Withrow v. Larkin, 421 U.S. 35, 46 (1975) [citation omitted.] 'Administrative agencies which adjudicate' are bound by this rule as well as courts. Id. Bias of decision makers renders the proceeding unconstitutional."), aff'd 60 Fed Appx. 861 (2d Cir. 2003), cert. denied 504 U.S. 967 (2003); In The Matter of 1616 Second Avenue Restaurant v. The New York State Liquor Authority, 75 N.Y.2d 158, 161 (N.Y. 1990) ("It is beyond dispute that an impartial decision-maker is a core guarantee of due process, fully applicable to adjudicatory proceedings before administrative agencies . . ..").

Second, plaintiff is entitled to an impartial decision-maker on her application for the principal's position at KGIA as a matter of due process, since she has a liberty interest in the position. That interest arises from the fact that she was forced to resign as acting principal and the DOE announced it would not rehire her because of the exercise of her free speech rights. The cases are legion which hold that both the discharge[1] and refusal to hire a public employee, based upon the employee's or applicant's exercise of her free speech rights, are prohibited, and any such action invests the employee with a liberty interest in the position. See Perry v. Sindermann, 408 U.S. 593, 597 (1972) (the government "many not deny a benefit to a person on

---

[1] See Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1983) ("Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit voluntarily."); Bensen v. American Ultramar Ltd., 1997 WL 66780, at *10 (S.D.N.Y. Feb. 14, 1997) ("Under the duress/coercion theory, a resignation may be found involuntary if, from the totality of the circumstances, it appears that the employer's conduct in requesting or obtaining the resignation effectively deprived the employee of a free choice in the matter") (quoting Angarita v. St. Louis County, 981 F.2d 1537, 1544 (8th Cir. 1992)).

a basis that infringes his constitutionally protected interests -- especially, his interest in freedom of speech. . . . [M]ost often we have applied the principle to denials of public employment [String citation omitted.] We have applied the principle regardless of the public employee's contractual or other claim to a job.").

In the companion case, Board of Regents v. Roth, 408 U.S. 564, 574-575 (1972), the Court conceded that infringement of free speech rights gives rise to a liberty interest in employment and consequently to an "opportunity for a fair adversary hearing" prior to an adverse employment decision. Id. at 575, n.14. Mt. Healthy City School District v. Doyle, 429 U.S. 274 (1977), confirmed that principle in a case involving non-renewal of a non-tenured teacher's contract. There, the Court stated, "Even though he could have been discharged for no reason whatsoever, and had no constitutional right to a hearing prior to the decision not to rehire him, Board of Regents v. Roth, 408 U.S. 564 (1972), he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms." 429 U.S. 274 at 283-84 (citing Perry, 408 U.S. 593).

Further, both the District of Columbia and the Tenth Circuit have held that refusal to employ job applicants based on the exercise of their First Amendment rights is prohibited. See Worrell v. Henry, 219 F.3d 1197, 1207 (10th Cir. 2000) (Pickering balancing test applies to "hiring decisions"); Hubbard v. Environmental Protection Agency, 949 F.2d 453, 460 (D.C.Cir. 1992) ("There can be no serious question that even individuals without property interests in their jobs cannot be discriminated against on the basis of their speech."), on rehearing in part, 982 F.2d 531 (D.C. Cir.), aff'd 982 F.2d 531 (D.C. Cir. 1992).[2] See also Rusco v. Housing Authority

---

[2] The rehearing involved only the question of eligibility for back pay, not the issue involved here. See 982 F.2d at 531-32.

of New Britain, 259 F.Supp.2d 160, 170 (D.Conn. 2003) (involving a decision not to hire on First Amendment grounds - "In this circuit, an adverse employment action includes inter alia, discharge, refusal to hire, refusal to promote, demotion, reduction in pay and reprimand.") (citing Kaluczky v. City of White Plains, 57 F.3d 202, 208 (2d Cir. 1995) (citing Rutan v. Republican Party, 497 U.S. 62, 75 (1990))); Franklin v. Atkins, 409 F.Supp 439, 445 (D. Colo. 1976) ("It has been said that no more direct assault on academic freedom can be imagined than for school authorities to be allowed to discharge a teacher because of his or her political, philosophical or ideological beliefs, Board of Regents v. Roth, 408 U.S. 564, 581 (Mr. Justice Douglas, dissenting), and the same would be true of a decision not to hire.").

Though the issue at bar does not involve plaintiff's right to a hearing as such, her right to a fair determination of her application under the circumstances of this case is the juridical equivalent of a fair hearing on a disputed employment decision. A fair hearing has broader ramifications than just resolving the instant employment dispute. It obviously implicates all future DOE employment decisions where First Amendment freedoms are at stake, regardless of the particular context in which they arise.

The upshot of this analysis is multi-fold. First, plaintiff's compelled resignation as acting principal of KGIA was constitutionally impermissible on First Amendment grounds, and the DOE's announcement that it would not re-hire her for the position of permanent principal (see Exhibit H to Complaint) is also constitutionally insupportable on the same First Amendment grounds. Second, since plaintiff has a liberty interest in her job, she now has an enforceable due process right to a fair determination of her application for reappointment as principal. Third, neither Chancellor Klein nor the community superintendent, his at-will subordinate who gave effect to the Chancellor's determination that Almontaser would not get the job (see Exhibit H to

Complaint, October 18, 2007 New York Times article) by denying her an interview, can have any role in the decision whether or not to appoint plaintiff as principal of KGIA. The indisputable fact is that neither can provide her with an impartial determination of her application. To allow the Chancellor and the Community Superintendent to participate in the appointment decision would be to deny plaintiff her due process and First Amendment rights.

Finally, several Circuit Court cases in the context of sex-based employment discrimination in the academic setting are instructive. Compare Gutzwiller v. Fenik, 860 F.2d 1317, 1333 (6th Cir. 1988) (in context of a sex-discrimination employment case where female professor was denied tenure, court noted that to avoid excessive court entanglement in matters best left to academic professionals, "reinstatement with tenure as a remedy for the discrimination should be provided in only the most exceptional cases, such as when a plaintiff reinstated to her former faculty position could not receive fair reconsideration (i.e., consideration without the taint of discrimination)"), with Kunda v. Muhlenberg College, 621 F.2d 532, 546-51 (3rd Cir. 1980) (where plaintiff's qualifications for tenure were not in dispute, injunction requiring defendant college to appoint plaintiff to a position as associate professor with tenure, back pay, and cost and attorneys' fees as remedy for sex-based employment discrimination was not improper), and Brown v. Trustees of Boston University, 891 F.2d 337, 359-61 (1st Cir. 1989) (same). Taken together Gutzwiller, Kunda and Brown should lead the Court to conclude that the appropriate remedy for the First Amendment retaliation suffered by plaintiff would, in the first instance, be fair reconsideration for the KGIA principal position by an impartial decision-maker.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court grant her request for injunctive relief requiring a full and fair opportunity for plaintiff to be reviewed and

considered for the position of principal according to principals of merit and fairness, as provided in Chancellor's Regulation C-30, and including final consideration by a disinterested person, pending the final determination of this action, together with such other and further relief as may be just and proper.

DATED:   New York, New York
         November 30, 2007

                          Respectfully submitted,

                          ___/s____Alan Levine_____
                          ALAN LEVINE (AL 5297)
                          99 Hudson Street- 14th Floor
                          New York, New York 10013
                          (212) 739-7506

                          BELDOCK LEVINE & HOFFMAN LLP

                          By: _/s/ Cynthia Rollings_
                          Cynthia Rollings (CR 6469)
                          Clare R. Norins (CN 2821)
                          99 Park Avenue - Suite 1600
                          New York, New York 10016
                          (212) 490-0400

                          *Attorneys for Plaintiff*