UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DEBBIE ALMONTASER,                                :
                                                  :
                                                  :
                              Plaintiff,          :
                                                  :
              -against-                           :    07 Civ. 10444 (SHS)
                                                  :
NEW YORK CITY DEPARTMENT OF                       :
EDUCATION; JOEL KLEIN, individually and in        :
his official capacity as Chancellor of the New York :  OPINION & ORDER
City Department of Education; ROSEMARY            :
STUART, individually and in her official capacity :
as Community Superintendent of District 15 and    :
Hiring Manager; CITY OF NEW YORK;                 :
MICHAEL BLOOMBERG, individually and in his        :
official capacity as Mayor of the City of New York; :
DENNIS WALCOTT, individually and in his           :
official capacity as Deputy Mayor for Education   :
and Community Development,                        :
                                                  :
                              Defendants.         :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Debbie Almontaser brought this action pursuant to 42 U.S.C. § 1983, alleging that defendants retaliated against her for statements that she made to the *New York Post* in violation of her right to free speech pursuant to the First Amendment and Article 1 § 8 of the New York Constitution and her Fourteenth Amendment right to substantive due process. Almontaser alleges that defendants New York City Department of Education ("DOE"), DOE Chancellor Joel Klein, Mayor Michael Bloomberg, and Deputy Mayor for Education and Community Development Dennis Walcott forced her to resign from her position as the interim acting principal of the Khalil Gibran International Academy ("KGIA") and that all defendants failed to consider her for the permanent position as principal of KGIA. After two days of

1

hearings, the Court denied Almontaser's motion for a preliminary injunction on December 5, 2007, which determination the U.S. Court of Appeals for the Second Circuit affirmed. *See Almontaser v. N.Y. City Dep't of Educ.*, 519 F.3d 505 (2d Cir. 2008). Almontaser then amended her complaint and subsequently withdrew all of her claims except the free speech and substantive due process claims. Defendants have now moved for summary judgment in their favor on those remaining claims.

I.  **BACKGROUND**

Because the facts relevant to this action have not changed since the Court issued its opinion and order on December 5, 2007, the Court assumes familiarity with those facts. *See* Transcript, Dec. 5, 2008 (Dkt. No. 11); *Almontaser*, 519 F.3d 505. In short, Debbie Almontaser was serving as the interim acting principal of the Khalil Gibran International Academy when the *New York Post* interviewed her on August 5, 2007. The August 6, 2007 article that followed from that interview unleashed criticism both internal and external to DOE and led to Almontaser's resignation on August 10, 2007. When DOE opened the position of principal of KGIA for hiring, Almontaser applied, but did not move past the first round of consideration. She then brought this action seeking a declaration that defendants violated her rights protected by the First and Fourteenth Amendments to the U.S. Constitution and Article I § 8 of the New York Constitution, an injunction directing defendants to consider her for the position of principal of KGIA, and compensatory and punitive damages.

II.  **STANDARD OF REVIEW**

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a

genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

## III. DISCUSSION

Almontaser alleges that defendants forced her to resign as interim acting principal of KGIA and refused to consider her for the position of principal of KGIA in retaliation for the statements she made to the *New York Post* during the course of the August 5, 2007 interview and in violation of the First Amendment.[1] Almontaser also contends that this retaliation was so arbitrary and unfair that it violated the Fourteenth Amendment's requirement of substantive due process. Defendants contend that Almontaser's speech was not protected by the First Amendment and that she cannot assert a substantive due process claim for the same actions allegedly protected by the First Amendment. Because the Court finds no genuine issue of material fact regarding whether Almontaser spoke to the *Post* pursuant to her official duties, defendants' motion for summary judgment is granted on Almontaser's First Amendment claims. Because Almontaser has no property or liberty interest in her interim acting position or in being considered for the position of principal of KGIA, the Court also grants defendants' motion for summary judgment on the substantive due process claim.

---

[1] Almontaser's claims under the First Amendment to the U.S. Constitution and Article I § 8 of the New York State Constitution are subject to the same analysis. *See Hous. Works, Inc. v. Turner*, 179 F. Supp. 2d 177, 199 n.25 (S.D.N.Y. 2001); *see also Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (applying *Garcetti* to retaliation claim brought pursuant to both the First Amendment and Article I § 8 of the New York Constitution).

3

A.  First Amendment Retaliation

To succeed on a First Amendment retaliation claim, a plaintiff must demonstrate that "(1) her speech was constitutionally protected, as a result of which (2) she suffered an adverse employment decision, and (3) a causal connection existed between the speech and the adverse employment decision, so that it can be said that her speech was the motivating factor in the determination." *Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005). A public employee's speech is constitutionally protected when she speaks "as a citizen on a matter of public concern," but "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 418, 421 (2006). In drawing this distinction, the Supreme Court reasoned that "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id.* at 418 (citing *Connick v. Myers*, 461 U.S. 138, 143 (1983)).

In opposing defendants' motion for summary judgment, Almontaser characterizes the question of whether she made her statements to the *Post* pursuant to her official duties as one of fact that precludes summary judgment. Specifically, she contends that the Court should parse each of her statements to the newspaper given in the course of the interview and consider both their context and content in determining whether each statement fell within her official duties. Almontaser also contends that "neither the *Post* article nor plaintiff's comments had anything to do with KGIA or plaintiff's responsibilities at the school . . . ." (Pl. Mem. in Opposition to Summary Judgment at 5-10.) The purpose, context, and content of the interview all belie this argument, however.

Almontaser concedes that responding to inquiries from the media regarding KGIA was part of her job as interim acting principal. (Pl.'s Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") ¶ 16.) As a matter of both DOE policy and her practice, Almontaser coordinated interviews with the media through the DOE press office, which screened the media outlets that made the requests and helped to prepare her for the interviews themselves. (Defs.' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1") ¶¶ 8-12; Pl.'s 56.1 ¶¶ 8-12.)

Consistent with this general approach, the DOE played an active role in the August 5, 2007 interview with Chuck Bennett of the *New York Post* at issue here. The *Post* contacted the DOE press office seeking the interview and provided an initial, written set of questions that the press office then sent to Almontaser. (Defs.' 56.1 ¶¶ 18-19; Pl.'s 56.1 ¶¶ 18-19.) Speaking to David Cantor of the DOE press office, Almontaser expressed reservations about participating in the interview, but agreed to do so based on Cantor's assertion that it would be in the best interest of the school. (Defs.' 56.1 ¶ 22; Pl.'s 56.1 ¶ 22; *see also* Dep. of Debbie Almontaser dated Nov. 27, 2007 ("Almontaser Dep.") at 56:2-19, Ex. A to Dec. of Paul Marks dated Feb. 13, 2009 ("Marks Dec.").) When asked at the hearing on the preliminary injunction whether she understood the *Post* interview to "pertain[] to issues and matters that concerned KGIA," Almontaser responded: "That was the only reason I did the interview because I was told it was in the best interest of the school. Otherwise I wouldn't have done the interview." (Transcript of Nov. 30, 2007 hearing ("Nov. 30 Tr.") at 155:24-156:3, Ex. B to Marks Dec.)

Both Cantor and Melody Meyer, also of the DOE press office, provided additional input regarding the *Post* interview by reviewing Almontaser's written responses to the reporter's initial questions prior to the interview itself and providing specific instructions directing Almontaser to avoid discussing the controversial t-shirts about which the *Post* had sought comment. (Defs.'

5

56.1 ¶¶ 19-23; Pl.'s 56.1 ¶¶ 19-23.) Meyer also was on the telephone for the interview with the *Post* and interjected her own clarification at one point in the conversation. (Defs.' 56.1 ¶ 25; Pl.'s 56.1 ¶ 25; *see also* Nov. 30 Tr. at 74:10-17.) Finally, the substance of the interview covered not only the meaning of the word "intifada," but also Almontaser's affiliations and at least one aspect of KGIA's educational plans. (Nov. 30 Tr. at 70:25-74:9.) On these facts—when the DOE's press office arranged, guided, and directly participated in Almontaser's interview, which she conducted in her role as interim acting principal of KGIA—the Court finds that, as a matter of law, Almontaser spoke to the *Post* pursuant to her official duties.

The fact that Almontaser made a comment during her interview with the *Post* that arguably fell outside the topics on which she had been directed to speak is not relevant for purposes of *Garcetti*.[2] In *Garcetti*, the Supreme Court declined to articulate the precise contours of speech that falls within a public employee's official duties, but it noted that the "inquiry is a practical one" since "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." 547 U.S. at 424-25. The Court did state, however, that "speech that owes its existence to a public employee's professional responsibilities" falls within the employee's professional duties and thus lacks First Amendment protection. *Id*. at 421; *see also Heffernan v. Straub*, 612 F. Supp. 2d 313, 326 (S.D.N.Y. 2009) (Speech was made pursuant to plaintiff's official duty when "an ordinary citizen not employed by the Fire Bureau would not . . . have the opportunity to convey [his opinion] through the channels that he utilized.").

---

[2] The Court also notes that to the extent that Almontaser argues that she did not intend to speak in her official capacity, that subjective intent does not change the analysis. The Second Circuit recently clarified that, for purposes of *Garcetti*, "a speaker's motive is not dispositive." *Sousa v. Roque*, --- F.3d ----, 2009 WL 2568949, at *8 (2d Cir. Aug. 21, 2009).

Here, the parties agree that Almontaser's official duties included speaking with the press; thus, the only question is whether Almontaser can carve out a portion of her statements made during an interview that was arranged and supervised by her employer as the protected speech of a private citizen. When that entire interview owes its existence to Almontaser's official responsibility to interact with the press on behalf of KGIA, then the individual statements made within the conversation also fall within her official—and thus unprotected—speech. *See Garcetti*, 547 U.S. at 421; *see also Healy v. City of New York Dept. of Sanitation*, 286 Fed. Appx. 744, 746 (2d Cir. 2008) (finding report of corruption made within scope of employee's official duties when the employee uncovered the corruption while performing assigned task).

Further supporting this logic, both employers and courts would face an unmanageable task if they had to parse each phrase of every sentence of an employee's speech to determine which were said in an official capacity and which were not. This approach would not comport with the Supreme Court's recognition that employers "need a significant degree of control over their employees' words and actions" and that the First Amendment does not bar "the exercise of employer control over what the employer itself has commissioned or created." 547 U.S. at 418, 422. Accordingly, Almontaser's speech was not protected by the First Amendment and defendants' motion for summary judgment on Counts I and II of the Second Amended Complaint is granted.

B.   Substantive Due Process

Almontaser contends that DOE's actions—allegedly forcing her to resign as interim acting principal of KGIA and then refusing to consider her for the permanent position of principal in response to the *Post*'s characterization of her interview—are so arbitrary and unfair as to violate her Fourteenth Amendment right to substantive due process. "To state a cause of

action under the due process clause, a plaintiff must show that she has a property interest, created by state law, in the employment or the benefit that was removed." *Bernheim v. Litt*, 79 F.3d 318, 322 (2d Cir. 1996) (citations omitted).

To establish a property interest, a plaintiff must have "'more than an abstract need or desire for [the property]. She must, instead, have a legitimate claim of entitlement to it' under state or federal law." *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)) (alterations omitted). "Where state law defines an employment position as probationary, the employee lacks a legal claim of entitlement and therefore lacks a property interest in the expectation of continued employment." *Jannsen v. Condo*, 101 F.3d 14, 16 (2d Cir. 1996) (quotation and citation omitted); *see also Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629-30 (2d Cir. 1996). Furthermore, "there is no constitutionally protected property interest in prospective government employment," and a job applicant therefore has no property interest in the position for which she applies. *Abramson v. Pataki*, 278 F.3d 93, 100 (2d Cir. 2002); *see also McMenemy v. City of Rochester*, 241 F.3d 279, 288 (2d Cir. 2001) (Plaintiff "had no property interest in fair consideration for [a] promotion.").[3]

Here, Almontaser concedes that as an interim acting principal, she was an at will employee of the DOE and that she understood that she could be removed from that position without charges or a hearing. (Almontaser Dep. at 41:22-42:16.) Thus, even crediting Almontaser's assertion that defendants forced her to resign as interim acting principal, she had no property interest in that post. Almontaser also had no vested property interest in being

---

[3] Defendants first raised the argument that Almontaser lacked a property right in her employment or opportunity for promotion in their reply brief. The Court usually disfavors arguments first raised in reply briefs, but it has the discretion to consider them. *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249 (2d Cir. 2005). Furthermore, the Court based its denial of Almontaser's motion for a preliminary injunction on her due process claims on exactly these grounds, and so she had notice of their relevance.

8

considered for the position as principal of KGIA. See *Abramson*, 278 F.3d at 100. Accordingly, Almontaser, as a matter of law, has not proven a violation of substantive due process with respect to her desire to be considered for the position of principal of KGIA.[4]

## IV. CONCLUSION

Almontaser participated in an interview with the *New York Post* on August 5, 2007, pursuant to her official duties as acting interim principal of the Khalil Gibran International Academy. As a result, the Court finds that, pursuant to the standard set forth in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), this speech is not protected by the First Amendment. Almontaser also failed to establish a property interest either in her position of interim acting principal of KGIA or in the position of principal of the school for purposes of her Fourteenth Amendment due process claim. Accordingly, defendants' motion for summary judgment is granted and the Clerk of Court is directed to enter judgment for defendants.

Dated: New York, New York
September 1, 2009

SO ORDERED:

Sidney H. Stein, U.S.D.J.

---

[4] To the extent that Almontaser bases her due process claim on a liberty interest, that claim, too, fails. To state a substantive due process claim based on deprivation of her liberty interest, Almontaser would have to demonstrate that she "suffered a loss of reputation coupled with the deprivation of a more tangible interest, such as government employment." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006). Here, Almontaser does not allege and has not shown any loss of reputation.

9